# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | REBECCA R PALLMEYER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4043 | **DATE** | December 13, 2002 |
| **CASE TITLE** | Thomas Russel Ames, #B-51770 vs. Donald Snyder, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

[10] ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [#25] is granted in part and denied in part. Plaintiff may proceed only against Defendants Wright, Miller, and Briley, and only insofar as they are sued in their individual capacities. Defendants Wright, Miller, Briley, and Kurian (who did not join the motion to dismiss) are directed to answer or otherwise plead within twenty-one days of the date of this order. The discovery stay is lifted. The ruling date set for December 17, 2002 is stricken. Telephone status set for 2/4/03 at 8:45 a.m. Call to be initiated by Defendants' counsel.

(11) ■ **See attached Memorandum Opinion and Order.**

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 13 2002 | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mjm | courtroom deputy's initials | date mailed notice | |
| | | mailing deputy initials | |

CLERK U.S. DISTRICT COURT

02 DEC 13 PM 3: 45

FILED 01 03-02711

Date/time received in central Clerk's Office

DOCKETED

DEC 1 3 2002

THOMAS RUSSEL AMES, #B-51770 )
)
     Plaintiff, )
)
v. )    No. 02 C 4043
)
DONALD SNYDER, et al. )    Hon. Rebecca R. Pallmeyer
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, correctional officials and health care providers at the Stateville Correctional Center, violated Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. Specifically, Plaintiff alleges that Defendants refused to provide proper treatment or accommodations after Plaintiff broke his foot. This matter is before the court for consideration of certain Defendants'[1] motion to dismiss the amended complaint for failure to state a claim. For the reasons stated in this order, the motion will be granted in part and denied in part.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

---

[1]    Defendant George Kurian is represented by private counsel. Dr. Kurian answered the amended complaint on October 3, 2002. The Illinois Attorney General has filed a motion to dismiss on behalf of the other five Defendants, who are correctional officers and administrators.

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to Plaintiff. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by Plaintiff. *Jones v. Edgar*, 3 F. Supp. 2d 979, 980 (C.D. III. 1998).

## FACTS

Plaintiff, Thomas Russel Ames, is a state prisoner. (First Amended Complaint, p. 2, Part I, "Plaintiff(s)" section.) Defendant Donald Snyder is the Director of the Illinois Department of Corrections. (*Id.*, Part II, "Defendant(s)" section.) Defendant Kenneth Briley is the warden of the Stateville Correctional Center. (*Id.*) Defendants Robert Griffin and Vernita Wright are, respectively, the Superintendent and Captain of the "E" Unit at Stateville. (*Id.*) Defendant Barbara Miller is the administrator of Stateville's health care unit. (*Id.*) Defendant George Kurian is a staff physician at the prison. (*Id.*)

Plaintiff's amended complaint, deemed true for purposes of the motion to dismiss, alleges as follows: On July 27, 2000, Plaintiff broke his right foot while playing basketball in Stateville's "E" recreation yard. (Amended Complaint, ¶ 1.) Plaintiff immediately notified the tower officer [who is not named as a Defendant] that he needed to see a medical technician. (*Id.*) No medical personnel arrived.

After waiting ten minutes or so, Plaintiff informed Defendant Wright that he had injured his foot, that it hurt very badly, and that he needed a medical technician to transport him to the health care unit. (*Id.*) Wright refused to call a medical technician, forcing Plaintiff to walk approximately 250 yards back to the cellhouse on his broken foot. (*Id.*)

2

About twenty minutes later, a med tech arrived, examined Plaintiff's foot, provided him with crutches, and escorted him to the health care unit. (*Id.*) Plaintiff waited about two and a half hours before Defendant Kurian examined him and cast his foot. (*Id.*, ¶ 3.) Kurian refused to admit Plaintiff to the infirmary, notwithstanding Plaintiff's expressed concerns about his ability to maneuver stairs and bathe. (*Id.*) Kurian also dismissed Plaintiff's fears about crutches being prohibited in the dining room. (*Id.*) Kurian told Plaintiff that he "need not worry" because the doctor intended to issue him a "medical lay-in/feed-in," a low gallery permit, and a low bunk permit. (*Id.*, ¶ 4.) Kurian also gave Plaintiff strict orders to stay off his foot and to keep it elevated. (*Id.*)

Kurian apparently never followed through on providing the medical permits as promised. When Plaintiff returned from the health care unit with a cast and crutches, Wright refused either to move him to the first floor gallery or to assign him a lower bunk. (*Id.*, ¶ 2.) The cellhouse shower had no available seating nor any handicap rails. (*Id.*) An unidentified sergeant (not a Defendant) told Plaintiff that there were no plastic chairs available, but provided him with a milk crate to sit on while showering. (*Id.*, ¶ 5.) The milk crate was dirty and had splinters that "poked and pierced" Plaintiff. (*Id.*) The splinters caused an infectious rash that required Penicillin to cure and that left permanent scarring. (*Id.*)

Because Plaintiff had to climb and descend stairs to go to meals, the health care unit and the shower, and also because he was forced to wait in lines, he developed complications in his injured foot. (*Id.*, ¶ 4.) The foot became ice cold and Plaintiff endured "intense and extreme," throbbing pain. (*Id.*) Plaintiff's toes became swollen and discolored and began to "look like grapes." On August 3, 2000, Plaintiff went to the emergency room, where a nurse informed him that he had "pocket syndrome"[2] and that his cast would have to be removed. (*Id.*)

---

2         Plaintiff does not define this term and it is not found in *Dorland's Illustrated*
(continued...)

Dr. Kurian asked Plaintiff why he had not kept his foot elevated and Plaintiff described the circumstances he had been facing. (*Id.*) Kurian nevertheless again refused to admit Plaintiff to the infirmary and again failed to issue a medical lay-in/feed-in permit or a low gallery/low bunk permit. (*Id.*) After examining him, Kurian "altered" the cast rather than removing it and replacing it altogether. (*Id.*, ¶ 7.) The old cast seeped fiberglass dust under the padding and caused "absolutely unbearable" itching and discomfort. (*Id.*)

Kurian advised Plaintiff to wrap his cast with a garbage bag when showering so that it would not get wet, warning him that if it did get wet and had to be removed, Plaintiff would receive a disciplinary report for destroying state property and would be required to pay the cost of a new cast. (*Id.*, ¶ 6.) Kurian furnished Plaintiff with a roll of tape that lasted only about twenty days (or for five showers), however, and left it to Plaintiff to obtain garbage bags from the correctional staff. (*Id.*) Plaintiff was unable to shower one day because he lacked tape; he was later able to flag down a medical technician, who provided him with more tape. (*Id.*)

On August 30, 2000, Defendant Miller (the health care unit administrator) refused to admit Plaintiff to the infirmary despite requests from Plaintiff, unnamed "agents," and his counselor. (*Id.*, ¶ 10.) Miller also declined to provide Plaintiff with "necessary medical supplies," namely wrapping tape. (*Id.*, ¶ 11.)

On September 5, 2000, Kurian refused to provide Plaintiff with replacement crutches even though Plaintiff demonstrated that the "faulty" crutches he had been issued slid out from under him. (*Id.*, ¶ 8.) On three separate occasions, Plaintiff fell to the ground, sustaining minor injuries. (*Id.*) Kurian also failed to order rehabilitative therapy, despite requests from Plaintiff during consultations on September 5, 2000, and September 26, 2000. (*Id.*, ¶ 9.) Plaintiff limped and endured "excruciating" pain for almost a year. (*Id.*) He still experiences lingering

---

[2](...continued)
*Medical Dictionary* (28th ed. 1994).

pain, swelling, cramps and rotation seizures. (*Id.*)

On September 13, 2000, Defendant Griffin (the cellhouse superintendent) failed to "inquire about" a doctor's appointment that had been scheduled for that day. (*Id.*, ¶ 12.) Griffin likewise failed to follow up on Plaintiff's report that he was scheduled to attend rehabilitative therapy the next day. (*Id.*)

Defendant Briley, the prison's warden, failed to respond to an emergency grievance on October 4, 2000, or to four letters written over the next two weeks. (*Id.*, ¶ 14.) On March 29, 2001, Briley denied Plaintiff's ensuing formal grievance, failing to address all but one of his claims. (*Id.*) On May 24, 2001, the Administrative Review Board [hereinafter, "A.R.B."], in considering Plaintiff's appeal relating to the denial of his grievance at the institutional level, directed the warden to submit a written report within twenty days regarding Plaintiff's medical care. (*Id.*, ¶ 15.) Briley failed to respond in a timely manner to the A.R.B.'s request for an investigation. (*Id.*) Because of Briley's delay [for an unspecified period of time], Plaintiff endured needless pain and suffering. (*Id.*)

Defendant Snyder ultimately denied the appeal of Plaintiff's grievance on October 11, 2001, ignoring most of his concerns. (*Id.*, ¶ 16; *see also* notice from the Administrative Review Board, attached as an unmarked exhibit to the Amended Complaint.)[3] Plaintiff contends that Snyder thereby effectively condoned the purported deliberate indifference on the part of the Stateville staff. (*Id.*)

---

[3]     Exhibits attached to a complaint are considered as part of the pleadings. *See Wright* v. *Assoc. Ins. Cos.*, 29 F.3d.1244, 1248 (7th Cir. 1994) (citing *Venture Assoc.* v. *Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## DISCUSSION

Plaintiff asserts that each of the Defendants has violated his Eighth Amendment rights. It is well-settled that a state official's deliberate indifference to an inmate's serious medical condition violates the Eighth Amendment, whether the defendant is a health care provider or correctional employee. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard a risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837; *Sherrod*, 223 F.3d at 610. As discussed below, accepting Plaintiff's factual allegations as true, the amended complaint states colorable causes of action against Defendants Wright, Miller and Briley insofar as they are sued in their individual capacities. The undeveloped record supports an inference that those Defendants acted with deliberate indifference to Plaintiff's serious medical needs. The amended complaint must be dismissed, however, as to Defendants Snyder and Griffin.

### I.    Captain Wright

Plaintiff's claims against Wright are that she: (1) forced Plaintiff to walk 250 yards to the cellhouse rather than ordering a stretcher and (2) refused to move him either to a lower gallery or a lower bunk. Defendants do not contest that a broken foot constitutes an objectively serious medical need. *Compare Sherrod*, 223 F.3d at 610 (inflamed appendix was objectively serious); *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (an ear infection, though a "common malady," could be deemed objectively serious where it "inflicted prolonged suffering" and required extensive treatment); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a condition is objectively serious if "failure to treat [it] could result in further

6

significant injury or unnecessary and wanton infliction of pain"). The court will therefore assume for purposes of this motion that Plaintiff's medical needs were "serious."

Viewed with the generous standard appropriate to this motion, the court finds that Plaintiff's allegations against Wright state a colorable cause of action under 42 U.S.C. § 1983. Depending on the circumstances, requiring Plaintiff to walk 250 yards to the health care unit on a foot he claimed he had injured "and hurt very much," rather than providing him with a stretcher, may have reflected such wanton and deliberate indifference to Plaintiff's condition as to amount to a civil rights violation. *Compare Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427-28 (7th Cir. 1991) (medical staff could be liable for removing patient's crutches and leg braces and ordering bed moved away from the toilet so that he would have to walk, if their actions reflected a deliberate or reckless indifference to needless pain and suffering); *contrast Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992) (ordering Plaintiff who claimed to have hurt leg during fight to walk to hospital 150 to 440 yards away rather than calling hospital staff to assist him did not amount to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment even though Plaintiff's ankle later turned out to be broken). This court is not prepared to conclude that Plaintiff could prove "no set of facts" which would entitle him to relief under 42 U.S.C. § 1983. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendant Wright's failure to move Plaintiff to a lower bunk or lower gallery likewise may have risen to the level of a constitutional violation. One of Plaintiff's main complaints against Defendant Kurian is that the doctor failed to issue him a low bunk/low gallery permit. Because Plaintiff's treating physician ordered no such placement, the court questions whether Wright would have recognized a need for placing Plaintiff in a lower bunk or ground floor cell. But if Plaintiff had an obvious need for special accommodations that Wright should have been aware of, Kurian's failure to issue a permit would not insulate Wright from liability. Plaintiff will

7

be permitted to further develop his claim that he was incapable of handling stairs or climbing into a bunk bed. The motion to dismiss will accordingly be denied as to Captain Wright.

## II.     Barbara Miller

Plaintiff charges that Miller, the prison's health care unit administrator, refused to: (1) admit Plaintiff to the infirmary and (2) provide him with "necessary medical supplies." The court concludes Plaintiff has articulated an arguable Eighth Amendment claim against Miller for failing to place him in the hospital despite requests from Plaintiff, counselors and other, unidentified "agents." It should be noted that, while Plaintiff's broken foot certainly required medical treatment, Plaintiff's factual allegations do not establish that his condition necessarily warranted hospitalization. Moreover, the court questions whether Miller, a non-physician whose duties are presumably administrative in nature, would have had the authority to implement or ratify any treatment plan in her capacity as the administrator of the health care unit. *See, e.g., Williams v. Manilla*, No. 98 CV 5639, 2000 WL 1307769, at *7 (N.D. Ill. Sep. 12, 2000) (finding that complaint letters sent to administrator of health care unit were insufficient to establish personal involvement for Section 1983 liability where the administrator played no direct role in providing treatment). To survive summary judgment, Plaintiff will have to make a triable showing that Miller both had the discretion to hospitalize him when Kurian ordered no such placement and that she refused to do so out of deliberate indifference. Nevertheless, the court will not dismiss Miller on the basis of the undeveloped record.

Plaintiff's claim that Miller failed to provide him with "medically necessary supplies" is on equally tenuous footing. If Miller's only omission was a failure to supply Plaintiff with more wrapping tape, that conduct alone would likely not rise to the level of a constitutional violation. Even assuming that Plaintiff's broken foot was a "serious" condition for purposes of Eighth Amendment analysis, the need for wrapping tape with which to cover the foot while showering

8

did not amount to a serious medical need. At worst, Miller's failure to provide Plaintiff with tape had the [unrealized] potential to make Plaintiff incur the cost of replacing his cast had water damaged it. Plaintiff states that he felt forced to forgo a shower only one day because he lacked tape; he admits that he was later able to obtain more tape from a medical technician. (Amended Complaint, ¶ 6.) Nevertheless, because Plaintiff need not plead specific facts to survive a motion to dismiss, the court will assume at this stage of review that Miller deprived Plaintiff of [other] "medically necessary medical supplies." The motion to dismiss is consequently denied as to Miller.

## III.  Robert Griffin

The amended complaint must be dismissed as to Defendant Griffin, the cellhouse superintendent who purportedly failed to ensure that Plaintiff attended a scheduled doctor's appointment one day and an appointment for rehabilitative therapy the next day. As discussed in preceding paragraphs, Plaintiff must show acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992); *Estelle, supra*, 429 U.S. at 106. The indifference to medical needs must be substantial, demonstrating a wanton infliction of unnecessary pain. *Gibson v. DeTella*, No. 96 C 0100, 1997 WL 136694, at *3 (N.D. Ill. Mar. 24, 1997).

Plaintiff's only allegations against Griffin are that he failed to "inquire" about two appointments scheduled for September 13 and 14. The court finds as a matter of law that two missed, follow-up appointments after Plaintiff's broken foot had already been cast did not rise to the level of an Eighth Amendment violation. There is no allegation that Plaintiff suffered any real detriment as a result of the missed appointments. *Compare Gibson* (no cause of action for missed rehabilitational therapy appointments). In the absence of any allegation of exacerbation of the injury, re-injury, delayed recovery, significant pain, or any other concern

of constitutional significance, Griffin's inaction (while no cause for commendation) was *de minimis* and does not subject him to liability under 42 U.S.C. § 1983.

## IV.    Donald Snyder

Snyder is sued for denying Plaintiff's grievance. Illinois' statutory grievance procedures do not create a protected interest, however. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Any right to a grievance is a procedural one, not substantive. *Id.* Snyder's failure to rule favorably on Plaintiff's prison grievance is therefore not actionable under Section 1983. Plaintiff attempts to establish liability by framing Snyder's decision as effectively "condoning" the acts of his subordinates. Unless Snyder was himself personally involved in those acts, however, he is not subject to liability under 42 U.S.C. § 1983.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). To be held liable under 42 U.S.C. § 1983, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

In the case at bar, the knowledge that Plaintiff was receiving inadequate medical treatment cannot be imputed to the Director of the Department of Corrections solely on the basis of Plaintiff's grievance. As Plaintiff states in the amended complaint and as reflected in the attached exhibits (*see* fn. 3), the Administrative Review Board requested a report from the warden; the prison made representations that Plaintiff was under a doctor's care and receiving

appropriate treatment. In this context, Snyder cannot be sued for dismissing Plaintiff's appeal, in the absence of any other direct, personal involvement.

## V.     Kenneth Briley

The record will require further development as to whether Defendant Briley, the prison's warden, acted with deliberate indifference to Plaintiff's medical needs. Again, while the thrust of this lawsuit concerns Plaintiff's dissatisfaction with the quality of care rendered by Kurian, it is not the case that Plaintiff could prove "no set of facts . . . which would entitle him to relief" with regard to his claim against Briley. *See Haines*, 404 U.S. at 521.

According to Plaintiff, Briley failed to respond to an emergency grievance, failed to acknowledge four letters written over the next two weeks, denied a second grievance without addressing most of Plaintiff's concerns, and failed to respond in a timely manner to a directive by the Administrative Review Board ordering the warden to submit a written report concerning Plaintiff's medical care. Plaintiff asserts that he experienced prolonged pain and suffering on account of Briley's inaction.

In contrast to the remote connection of the Director of the I.D.O.C., Warden Briley was in a position to investigate and do something about Plaintiff's concerns. *See, e.g., Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996): "a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." The amended complaint sets forth a sufficiently colorable claim against Briley to survive a motion to dismiss. Defendants' motion to dismiss is accordingly denied as to Briley.

## VI.     Official vs. Individual Capacity

The amended complaint will be dismissed against Defendants Wright, Miller and Briley only insofar as they are sued in their official capacities. The State, state agencies and state officials acting in their official capacities are not "persons" who may be sued for damages under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 45, 71 (1989); *Sandville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). Actions for damages can be brought against state officials only in their individual capacity. *Id.; see also Hafer v. Melo*, 502 U.S. 21 (1991). In fact, Plaintiff explains that he named Defendants in their official capacities only because he filed a motion for a preliminary injunction along with his original complaint. Plaintiff concedes that any claim for injunctive relief is now moot. *See* Plaintiff's "Motion in Opposition" at p. 4. Accordingly, Plaintiff may proceed against the remaining Defendants only to the extent that he is suing them in their individual capacities.

## CONCLUSION

In sum, the amended complaint is dismissed as to Defendants Griffin and Snyder. The amended complaint fails to state a colorable claim against those individuals. Plaintiff has articulated cognizable claims against Defendants Wright, Miller, and Briley for acting with deliberate indifference to Plaintiff's serious medical needs, however. Plaintiff may therefore proceed against Defendants Wright, Miller and Briley, but only to the extent that they are sued in their individual capacities. This order does not address Plaintiff's claims against Defendant Kurian, who did not join the motion to dismiss. This order, furthermore, is not intended to discourage either party from filing a properly supported motion for summary judgment.

It is therefore ordered that Defendants' motion to dismiss (docket #25) is granted in part and denied in part. The amended complaint is dismissed as to Defendants Griffin and Snyder pursuant to FED. R. CIV. P. 12(B)(6); the amended complaint is also

dismissed to the extent Plaintiff sues Defendants in their official capacities. The motion to dismiss is denied in all other respects. The discovery stay is lifted.

It is further ordered that Defendants Wright, Miller and Briley answer or otherwise plead within twenty-one days of the date of this order.

ENTER:

Dated: December 13, 2002

REBECCA R. PALLMEYER
United States District Judge

13